UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

KATERINA PLEW,

    Plaintiff,

    -v-                                          No.  08 Civ. 3741 (LTS)(MHD)

LIMITED BRANDS, INC., INTIMATE
BRANDS, INC., LIMITED BRANDS
STORE OPERATIONS, INC., VICTORIA'S
SECRET STORES BRAND MANAGEMENT,
INC., VICTORIA'S SECRET DIRECT
BRAND MANAGEMENT, LLC AND
VICTORIA'S SECRET STORES, LLC,
    Defendants.


-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Katerina Plew ("Plew" or "Plaintiff") brings this action against Limited Brands, Inc., Intimate Brands, Inc., Limited Brands Store Operations, Inc., Victoria's Secret Stores Brand Management, Inc., Victoria's Secret Direct Brand Management, LLC and Victoria's Secret Stores, LLC (collectively "VS" or "Defendants").  Plaintiff asserts that the Defendants' Very Sexy 100-Way Brassiere ("100-Way Bra") infringes Plaintiff's U.S. Patent no. 6,733,362 (the "'362 patent"), which describes an adjustable type of brassiere.  Defendants counterclaim for a declaration of invalidity of the '362 patent.  The Court has jurisdiction of the statutory claims pursuant to 28 U.S.C. § 1331.

        Two summary judgment motions by Defendants are now before the Court.  In the first, Defendants seek a determination pursuant to 35 U.S.C. § 103 that Plaintiff's '362 patent is invalid for obviousness.  In the second, Defendants seek a determination that their accused

garment does not infringe the '362 patent. The Court has reviewed thoroughly all of the parties' submissions and, for the reasons explained below, both of Defendants' motions are denied.

BACKGROUND

The following material facts are undisputed, except where noted. Plaintiff could not accommodate the straps of a dress she was wearing with the market's current brassieres, and conceived of an idea for a brassiere with multiple strap configurations. (Defs.' 56.1 St. ¶ 1.)[1] Plaintiff filed an Invention Disclosure with the United States Patent and Trademark Office ("USPTO") on May 1, 2000. (Defs.' 56.1 St. ¶ 3.) On June 18, 2002, Plaintiff filed an application with the USPTO that contained 12 claims. (Defs.' 56.1 St. ¶ 11.) The USPTO rejected claims numbered 1-6 and 10 under 35 U.S.C. § 102(b) on the ground that they were anticipated by another patent. (Defs.' 56.1 St. ¶ 13.) The USPTO allowed claims numbered 7-9 to be rewritten as independent claims because those claims were not found in the cited references. (Defs.' 56.1 St. ¶ 14.) Plaintiff complied and amended claim no. 1 of her patent application to include those allowable claims. (Defs.' 56.1 St. ¶ 16.)

Claim no. 1 of Plaintiff's patent as granted is directed to a brassiere with

---

[1] Both parties have submitted multiple S.D.N.Y. Local Civil Rule 56.1 statements. Citations to Defendants' Rule 56.1 Statement ("Defs.' 56.1 St. ¶ __") refer to Defendants' S.D.N.Y. Local Civil Rule 56.1 Statement of Material Facts in Support of Their Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,733,362. Citations to Plaintiff's 56.1 Statement ("Pl.'s 56.1 St. ¶ __") refer to Plaintiff's S.D.N.Y. Local Civil Rule 56.1 Statement of Material Facts in Support of Her Opposition to Defendants' Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,733,362. To the extent that the parties' other Rule 56.1 statements are relevant to this proceeding, the information provided in the cited documents covered the same issues and evidence. Citations to any and all Rule 56.1 statements incorporate by reference citations to the underlying evidentiary submissions.

slits cut into a piece of fabric along the brassiere cups and torso bands which allow the hooks of shoulder straps to be attached at any point.  (See Defs.' 56.1 St. ¶ 28.)  Material hides the loops from sight and prevents the metal hooks from touching the skin of the wearer.  (See Defs.' 56.1 St. ¶ 28.)  The brassiere also includes two fabric loops in the space between the cups of the brassiere which the brassiere straps can be attached to create a V-neck silhouette.  (See Defs.' 56.1 St. ¶ 28.)  Claim 1 is the only independent claim of the patent.  The parties have stipulated to the construction of claim 1 as a means-plus-function term under 35 U.S.C. § 112 ¶ 6.  (See docket entry no. 33; Defs.' 56.1 St. ¶ 19; Von Simson Decl., Ex. O.)

Convertible bras of various styles have been on the market for decades.  (See Defs.' 56.1 St. ¶ 10; Zinna Decl. A- J, Ex. H)[2].  However, the USPTO allowed Plaintiff's amended patent on October 27, 2003, stating that "[n]one of the cited references, alone or in combination, disclose a brassier[e] with a strip of fabric loops placed across and hidden by an upper edge of the brassier[e] including in between the cups and the further improvement of a means of an upper strip of material overlying the strip of fabric loops for preventing discomfort to the wearer as claim [sic] in claim 1."  (Defs.' 56.1 St. ¶ 19.)

Plaintiff approached companies, including VS, to market her patented invention by having her cousin, Ms. Maria Zarkadas, mail DVD materials, send emails and make telephone calls.  (Pl.'s 56.1 St. ¶¶ 10-17.)  Ms. Zarakadas and Plew communicated with VS and scheduled a meeting with Mr. James Pappas, Senior Vice President for Production Sourcing at Victoria's

---

[2]   Defendants filed a declaration of attorney Michael J. Zinna in support of each of their motions.  Both are dated July 10, 2010; they differ most obviously in the number of exhibits each tenders. Neither is labeled to indicate the particular motion it supports.  Accordingly, to distinguish the affidavits, the Court will designate each by the range of exhibits accompanying it, viz., "Zinna Decl. A-J" and "Zinna Decl. A-R."

Secret Stores. (Pl.'s 56.1 St. ¶¶ 10-17.) This meeting was later cancelled. (Pl.'s 56.1 St. ¶ 17.)

VS sells the 100-Way Bra, which has straps that can be configured 100 different ways. (Defs.' 56.1 St. ¶¶ 30, 39.) The 100-Way Bra was designed by DB Apparel UK, Ltd., a company with a commercialization relationship with VS. (Pl.'s 56.1 St. ¶ 27.) The 100-Way Bra has a clear center bridge between the cups, which creates a space in between them. (Defs.' 56.1 St. ¶ 37.) The brassiere includes elastic tapes with loops along the edges of the brassiere cups and torso bands that enable the wearer to attach the shoulder straps in numerous locations. (Defs.' 56.1 St. ¶¶ 33, 34.) These loops extend up to the bridge. (Defs.' 56.1 St. ¶¶ 33, 38.) The hooks do not touch the wearer's skin because the elastic tapes prevent them from doing so. (Defs.' 56.1 St. ¶ 46.)

Plaintiff and Defendants proffer expert testimony that conflicts as to whether the techniques utilized in prior patents are the same as those used in Plew's invention and as to whether the prior art teaches away from Plew's patent. (See Chin Decl., Ex. J, ¶¶ 3, 5; Defs.' 56.1 St. ¶¶ 48-59; Zinna Decl. A-J, Ex. B). The parties also present conflicting expert evidence as to whether it would have been obvious to one of ordinary skill in the art to combine the elements claimed in Plew's patent. (See Chin Decl., Ex. B, 236-37; Chin Decl., Ex. J, ¶ 4).

In support of their non-infringement argument, Defendants assert that the 100-Way Bra has substantially different structures from the patented brassiere and thus does not infringe Plew's patent claims. (See Defs.' 56.1 St. ¶¶ 30-47.) Plaintiff's expert, Beverly Johnson, asserts that the 100-Way Bra accomplishes the same function as Plew's invention through identical or equivalent structures. (Von Simson Decl., Exs. M, N.)

DISCUSSION

Summary judgment is to be granted in favor of a moving party where the "pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is considered material "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

Courts should approach motions for summary judgment for patent invalidity and infringement with great care because of the numerous fact issues involved. Andersen Corp. v. Pella Corp., 300 F. App'x 893, 899 (Fed. Cir. 2008) (invalidity), cert. denied, 129 S. Ct. 2739 (2009); Amhil Enters. Ltd. v. Wawa, Inc., 81 F.3d 1554, 1557-58 (Fed. Cir. 1996) (infringement).

*Motion for Summary Judgment for Invalidity of '362 Patent*

A patent is invalid under 35 U.S.C. § 103 "if the differences between the subject matter sought to be patented and the prior art . . . would have been obvious at the time the invention was made to a person having ordinary skill in the art . . ." 35 U.S.C.A. § 103(a) (West

2004).  Courts must give "due weight to a patent's presumed validity under 35 U.S.C. § 282 (2000), and an accused infringer must show by clear and convincing evidence that a patent is invalid."  Geneva Pharm., Inc. v. GlaxoSmithKline PLC., 349 F.3d 1373, 1377 (Fed. Cir. 2003).

"Obviousness is a question of law based on underlying factual determinations." Rockwell Int'l Corp. v. United States, 147 F.3d 1358, 1362 (Fed. Cir. 1998).  In the obviousness analysis "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved."  Graham v. John Deere Co. of Kan. City, 383 U.S. 1, 16 (1966).

In KSR International Company v. Teleflex Incorporated, 550 U.S. 398 (2007), the Supreme Court instructed courts to "take account of the inferences and creative steps that a person of ordinary skill in the art would employ" in looking at numerous and/or interrelated patent claims and not to require "prior art references address[ing] the precise problem that the patentee was trying to solve" in analyzing the question of obviousness.  KSR, 550 U.S. at 401.  Courts should still, however, attempt to "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does."  Id.

In determining a motion for summary judgment of invalidity premised on obviousness, the Court examines whether there is a material dispute as to one of these primary factors that will make a difference in the final determination of obviousness.  See Rockwell, 147 F.3d at 1362; see also KSR, 550 U.S. at 427 (allowing for summary judgment only where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute . . .").

There are genuine issues of material fact regarding the scope of the prior art, its relationship to Plew's patent and the level of ordinary skill in the art.  Plaintiff and Defendants

proffer conflicting expert testimony as to whether the techniques utilized in prior patents are the same as in Plew's invention and whether or not the prior art teaches away from Plew's patent.  See Andersen, 300 F. App'x at 899 (vacating a grant of summary judgment of invalidity where there was a question as to the scope and content of the prior art and stating "'whether [the prior art] teaches toward or away from the claimed invention also is a determination of fact.'") (quoting Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc., 73 F.3d 1085, 1088 (Fed. Cir. 1995)).  The record also shows that there is a factual dispute regarding the level of ordinary skill in the art of bra-making and whether Plew's claimed invention is within it.

>Defendants, who have the burden on this motion practice of demonstrating by clear and convincing undisputed evidence their entitlement to judgment as a matter of law, and who must also overcome the presumptive validity of Plew's patent, have failed to do so with respect to their invalidity contention.  Defendants' motion for a judgment of invalidity is therefore denied.

*Motion for Summary Judgment for Non-Infringement of '362 Patent*

>A means-plus-function claim term is literally infringed when "the relevant structure in the accused device performs the identical function recited in the claim and that structure is identical or equivalent to the corresponding structure in the specification."  Intellectual Sci. and Tech., Inc. v. Sony Elec., Inc., 589 F.3d 1179, 1183 (Fed. Cir. 2009).  The parties here do not dispute the identical functions of the brassieres.

>Defendants point to the aspects of the structures of the '362 patent brassiere and the 100-Way Bra that they assert are not identical.  Plaintiffs proffer expert testimony that the structures are identical. Furthermore, Defendants do not address structural equivalence and the Court finds that there are material factual disputes as to that issue as well.  Courts determine

structural equivalence by establishing whether "the two [structures] perform the identical function in substantially the same way, with substantially the same result." <u>Kemco Sales, Inc. v. Control Papers Co.</u>, 208 F.3d 1352, 1364 (Fed. Cir.2000). "The proper test is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial." <u>Chimunatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.</u>, 145 F.3d 1303, 1309 (Fed. Cir. 1998). This is a factual analysis. <u>See</u> <u>Hartness Int'l Inc. v. Simplimatic Eng'g Co.</u>, 819 F.2d 1100, 1110 (Fed. Cir. 1987) ("Whether that accused device is a § 112 equivalent of the described embodiment is a question of fact.").

        Both Plew's brassiere and the 100-Way Bra have straps that can be attached at any point along the brassiere cups and torso bands on both bras. Though the loops are arguably placed in different locations between the cups, the straps can be arranged for similar silhouettes. Neither bra allows the hooks to touch the skin of the wearer. In light of these similarities, a reasonable juror could determine that the structures are equivalent and thus find in Plaintiff's favor on her infringement claim. Defendants' motion for summary judgment of non-infringement must therefore be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are denied. This memorandum opinion resolves docket entries no. 53 and 57. The stay issued on September 18, 2009 (docket entry no. 80), is lifted and the case is restored to the active calendar.

The parties are directed to meet with Magistrate Judge Dolinger promptly for settlement purposes and to address any outstanding pretrial issues.

SO ORDERED.

Dated: New York, New York
August 4, 2010

LAURA TAYLOR SWAIN
United States District Judge