UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATERINA PLEW

               Plaintiff,

     vs.

LIMITED BRANDS, INC., INTIMATE
BRANDS, INC., LIMITED BRANDS STORE
OPERATIONS, INC., VICTORIA'S SECRET
STORES BRAND MANAGEMENT, INC.,
VICTORIA'S SECRET DIRECT BRAND
MANAGEMENT, LLC AND VICTORIA'S
SECRET STORES, LLC.

               Defendants.

Case No. 08-CV-3741(LTS)(MHD)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' FIVE MOTIONS *IN LIMINE*

TABLE OF CONTENTS

ARGUMENT ................................................................................................................... 1

I.      THIS COURT SHOULD DENY DEFENDANTS' MOTION *IN LIMINE* TO
        PRECLUDE (1) PLAINTIFF'S EXPERTS FROM OFFERING ANY
        TESTIMONY OUTSIDE THE SCOPE OF THEIR EXPERT REPORTS,  AND
        (2) PLAINTIFF FROM OFFERING ANY TESTIMONY  INCONSISTENT
        WITH THE EXPERT REPORTS .......................................................................... 3

        A.      PLAINTIFF CAN OFFER HER LAY OPINION THAT THE
                PLEASURE STATE LICENSE SETS FORTH A REASONABLE
                ROYALTY FOR INFRINGEMENT DAMAGES ..................................... 3

        B.      PLAINTIFF'S EXPERT CAN APPLY THE PLEASURE STATE
                LICENSE   ROYALTY FORMULA TO THE 100 WAY BRA ................ 6

        C.      PLAINTIFF MAY OFFER FACT WITNESS TESTIMONY
                REGARDING THE GEORGIA PACIFIC FACTORS ............................ 7

        D.      PLAINTIFF CAN OFFER THE TESTIMONY OF DEFENDANTS'
                WITNESSES REGARDING PRIMARY AND SECONDARY INDICIA
                OF NON-OBVIOUSNESS ........................................................................ 8

        E.      PLAINTIFF'S INFRINGEMENT EXPERT, MS. BEVERLY
                JOHNSON, MAY TESTIFY IN SUPPORT OF PLAINTIFF'S
                WILLFULNESS CASE ............................................................................. 8

II.     THIS COURT SHOULD DENY DEFENDANTS' MOTION TO PREVENT
        THE USE OF PEJORATIVE TERMS OR PHRASES AT TRIAL ....................... 9

III.    THIS COURT SHOULD DENY DEFENDANTS' MOTION *IN LIMINE* TO
        PREVENT PLAINTIFF FROM ADVANCING ARGUMENTS AT TRIAL
        INCONSISTENT WITH THIS COURT'S CLAIM CONSTRUCTION  ORDER
        ........................................................................................................................... 10

IV.     THIS COURT SHOULD DENY DEFENDANTS' SUPPLEMENTAL  MOTION
        *IN LIMINE* TO STRIKE EXPERT REPORT AND  EXCLUDE  TRIAL
        TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT TOMIMA  EDMARK 12

        A.      MS. EDMARK IS QUALIFIED TO TESTIFY AS A DAMAGES
                EXPERT ................................................................................................. 12

        B.      DEFENDANTS' OBJECTIONS TO MS. EDMARK'S
                METHODOLOGY GO TO THE WEIGHT, NOT THE
                ADMISSIBILITY, OF HER EXPERT REPORT AND TESTIMONY ... 14

C.      MS. EDMARK'S SUPPLEMENTAL REPORT WAS TIMELY ........... 16

V.      THIS COURT SHOULD DENY DEFENDANTS' MOTION *IN LIMINE* TO PREVENT PLAINTIFF FROM CALLING MS. LORI GREELEY TO  TESTIFY AT TRIAL ....................................................................................................... 18

CONCLUSION............................................................................................................... 21

TABLE OF AUTHORITIES

<u>CASES</u>

<u>AIA Holdings, S.A. v. Lehman Bros.</u>, 2002 U.S. Dist. 22559 at *2-3, Case No. 97 Civ. 4978 (S.D.N.Y. Nov. 21, 2002) ...................................................................................... 9

<u>Amorgianos v. National R.R. Passenger Corp.</u>, 303 F.3d 256, 267 (2d Cir.2002)............. 2

<u>Aristocrat Leisure, Ltd. v. Deutsche Bank Trust Co. Ams.</u>, 2009 U.S. Dist. Lexis 89183 at *19 (S.D.N.Y.Y September 28, 2009) ....................................................................... 9

<u>Baxter Diagnostics, Inc. v. Novatek Medical, Inc.</u>, No. 94 Civ. 5520, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998) ................................................................................... 2

<u>Borawick v. Shay</u>, 68 F.3d 597, 610 (2d Cir. 1995), <u>cert.</u> <u>denied</u>, 517 U.S. 1229, 116 S.Ct. 1869 (1996).................................................................................................... 2, 14

<u>Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.</u>, 2003 WL 1878246, Case No. 99 Civ. 1725 (S.D.N.Y. April 11, 2003)............................................................................ 12

<u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993)......................................... 2, 14

<u>Dow Chem. Co. v. Mee Indus., Inc.</u>, 341 F.3d 1370, 1382 (Fed.Cir.2003) ...................... 7

<u>Emig v. Electrolux Home Products, Inc.</u>, 2008 WL 4200988 at *4, Case No. 06 CV 4791 (S.D.N.Y. September 11, 2008) ............................................................................ 13, 14

<u>Georgia-Pacific Corp. v. United States Plywood Corp.</u>, 318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................................................................................................ 7, 15

<u>Graham v. John Deere Co. of Kansas</u>, 383 U.S. 1, 17-18 (1966)....................................... 8

<u>Highland Capital Mgmt., L.P. v. Schneider</u>, 551 F. Supp.2d 173, 193 (S.D.N.Y. 2008). 10

<u>Hynix Semiconductor, Inc. v. Rambus, Inc.</u>, 2008 WL 504098 at * 4, Case No. CV 00 20905 (Feb. 19, 2008)................................................................................................... 4

<u>In re Joint Eastern & Southern District Asbestos Litigation</u>, 52 F.3d 1124, 1132 (2d Cir. 1995). ...................................................................................................................... 2, 3

<u>In re Seagate Technology, LLC</u>, 497 F.3d 1360, 1371 (Fed. Cir. 2007). .......................... 9

<u>Keenan v. Mine Safety Appliances Co.</u>, 2006 WL 2546551 at *2, Case No. 03 CV 710 (E.D.N.Y. Aug. 31, 2006)........................................................................................... 13

Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175-76 (3rd Cir. 1993) ..................... 4

Liriano v. Hobart Corp., 949 F.Supp. 171, 177 (S.D.N.Y. 1996)..................................... 14

Llewellyn v. Allstate Home Loans, Inc., 2011 WL 2415770 at *4. Case No. 08 cv 00179
    (D. Colo. June 16, 2011) ................................................................................ 18

Malletier v. Dooney & Bourke, Inc., 525 F.Supp.2d 558, 562 (S.D.N.Y. 2007) ............. 14

McCullock v. H.B. Fuller Co., 61 F.3d 1038 (2d Cir. 1995)........................................ 2, 13

Medforms, Inc. v. Healthcare Management Solutions, Inc., 290 F.3d 98, 110-111 (2d Cir.
    2002). .......................................................................................................... 5

Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed.Cir.1992)..................................... 9

Rentrop v. Spectranetics Corp., 514 F.Supp.2d 497 (S.D.N.Y. 2007) ............................ 11

Rosco, Inc. v. Mirror Lite Co. 2009 WL 1689301 at *7, Case No. 96 CV 5658 (S.D.N.Y.
    June 17, 2009)............................................................................................... 15

Seitz v. Envirotech Systems Worldwide, Inc. 2008 WL 656513 at * 5, Case No. H-02-
    4782 (S.D. Tex. March 6, 2008) ...................................................................... 4

Six West Retail Acquisition Corp. v. Sony Theatre Management Corp., 203 F.R.D. 98
    (S.D.N.Y. 2001) ............................................................................................ 19

Softel, Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955 (2d Cir.1997) ....... 16

Sullivan  v. Ford Motor Co., 2000 WL 343777 at *4, Case No. 97 CV 0593 (S.D.N.Y.
    March 31, 2000)............................................................................................. 13

Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 102 (S.D.N.Y. 1997),........................... 19

United States v. Brown, 776 F.2d 397, 400 (2d Cir. 1985) ............................................. 13

Wechsler v. Hunt Health Systems, Ltd., 381 F.Supp.2d 135, 140 (S.D.N.Y. 2003).......... 2

STATUTES

35 U.S.C. § 284................................................................................................. 7

RULES

Federal Rule of Civil Procedure 26 ..................................................... 1, 16, 18

Federal Rule of Civil Procedure 37 .................................................................. 16

Federal Rule of Evidence 701 ............................................................................................ 4

Federal Rule of Evidence 702 .......................................................................................... 12

Plaintiff Katerina Plew, by her undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Defendants' Five Motions *In Limine*.  This memo responds to the following motions:

1.  Defendants' Motion *In Limine* to Preclude (1) Plaintiff's Experts from Offering Any Testimony Outside The Scope Of Their Expert Reports, and (2) Plaintiff From Offering Any Testimony Inconsistent With The Expert Reports

2.  Defendants' Motion *In Limine* to Prevent Plaintiff From Advancing Arguments At Trial Inconsistent With This Court's Claim Construction Order

3.  Defendants' Motion to Prevent the Use of Pejorative Terms Or Phrases At Trial.

4.  Defendants' Supplemental Motion *In Limine* To Strike Expert Report And Exclude Trial Testimony of Plaintiff's Damages Expert Tomima Edmark

5.  Defendants' Motion *In Limine* To Prevent Plaintiff From Calling Ms. Lori Greeley To Testify At Trial

## ARGUMENT

Each one of defendants' five motions *in limine* fails on its own merits.  However, four of the five motions share a common flaw.  In four of the motions, defendants' arguments go primarily to the weight, not the admissibility, of the evidence they seek to preclude from trial.  Challenges to the weight of evidence should be addressed during cross examination, not by preclusion.  Four of the motions should be denied on that general ground alone.  The fifth motion, to preclude the testimony of Lori Greeley, is not really a motion *in limine* at all.  It is a motion for a protective order.  It should be denied because Ms. Greeley is a witness with information relevant to plaintiff's case. Defendants' arguments that she is essentially too important an executive to be deposed are contrary to the provisions of Federal Rule of Civil Procedure 26.

Contrary to defendants' motions *in limine*, the proper purpose of such a motion is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. <u>Wechsler v. Hunt Health Systems, Ltd.</u>, 381 F.Supp.2d 135, 140 (S.D.N.Y. 2003). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. <u>Id.</u> (citing <u>Baxter Diagnostics, Inc. v. Novatek Medical, Inc.</u>, No. 94 Civ. 5520, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998). A court considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. See <u>Nat'l Union Fire Ins. Co.</u>, 937 F.Supp. at 287.

Admissibility entails a threshold inquiry over whether a certain piece of evidence ought to be admitted at trial. <u>In re Joint Eastern & Southern District Asbestos Litigation</u>, 52 F.3d 1124, 1132 (2d Cir. 1995). The trier of fact, on the other hand, is tasked with considering the sufficiency, or weight, of admitted evidence, including expert testimony, and does so only after an opponent has an opportunity to challenge the expert testimony with "vigorous cross-examination, presentation of contrary evidence," and summation. <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 596 (1993); <u>Amorgianos v. National R.R. Passenger Corp.</u>, 303 F.3d 256, 267 (2d Cir.2002); <u>Campbell v. Metropolitan Property & Casualty Ins. Co.</u>, 239 F.3d 179, 186 (2d Cir.2001) ("[T]he weight of the evidence is a matter to be argued to the trier of fact...."); <u>Borawick v. Shay</u>, 68 F.3d 597, 610 (2d Cir.1995) ("[T]he Court [in Daubert ] expressed its faith in the power of the adversary system to test shaky but admissible evidence." (internal quotations omitted)); <u>McCullock v. H.B. Fuller Co.</u>, 61 F.3d 1038, 1043 (2d Cir.1995) ("[Defendant's] quibble with [plaintiff's expert's] academic training ... and his other alleged shortcomings ... were

properly explored on cross-examination and went to his testimony's weight."); In re Eastern & Southern District Asbestos Litigation, 52 F.3d at 1132.

The great majority of defendants' objections, to the extent they have any arguable merit at all, are properly addressed through cross examination, not preclusion. For that reason, and for the reasons set forth in detail below, their five motions *in limine* should be denied.

**I.      THIS COURT SHOULD DENY DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE (1) PLAINTIFF'S EXPERTS FROM OFFERING ANY TESTIMONY OUTSIDE THE SCOPE OF THEIR EXPERT REPORTS, AND (2) PLAINTIFF FROM OFFERING ANY TESTIMONY INCONSISTENT WITH THE EXPERT REPORTS**

Defendants' motion *in limine* to preclude certain damages testimony fails because it is based to a significant degree on a general assertion that all damages testimony is "inherently expert testimony," and therefore can only be presented by an expert witness. That proposition is incorrect. Neither the Federal Rules of Evidence, nor the Patent Act, nor the Georgia Pacific factors require an expert to testify regarding infringement damages. In this case, plaintiff will present her own lay opinion testimony, and the testimony of other fact witnesses, in addition to expert testimony, to establish a reasonable royalty. Defendants' unsupported assumption that only experts can testify regarding a reasonable royalty is fatal to this motion *in limine*.

**A.      PLAINTIFF CAN OFFER HER LAY OPINION THAT THE PLEASURE STATE LICENSE SETS FORTH A REASONABLE ROYALTY FOR INFRINGEMENT DAMAGES**

Defendants do not cite a single case for their unavailing argument that the calculation of a reasonable royalty is "inherently expert testimony," and that plaintiff should therefore be barred from presenting evidence that the royalty formula set forth in a third-party license agreement (the "Pleasure State License") is an appropriate measure of

damages in this case.[1]  The argument fails because it is directly contradicted by Federal Rule of Evidence 701 and the cases that apply the rule.

Rule 701 allows a non-expert witness to offer opinion testimony to the extent the testimony is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Lay opinion testimony regarding a reasonable royalty is admissible at trial. "Even if [the lay witness's] opinion on lost profits is inadmissible as an expert opinion under Rule 702, he still may provide a lay opinion on lost profits and reasonable royalty rates." Seitz v. Envirotech Systems Worldwide, Inc. 2008 WL 656513 at * 5, Case No. H-02-4782 (S.D. Tex. March 6, 2008). Furthermore, the principal of a business can rely on reports prepared by others to render lay opinion testimony on damages.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175-76 (3rd Cir. 1993).  "It is logical that in preparing a damages report the author may incorporate documents that were prepared by others, while still possessing the requisite personal knowledge or foundation to render his lay opinion admissible under Fed.R.Evid. 701." Id.  Moreover, "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Hynix Semiconductor, Inc. v. Rambus, Inc., 2008 WL 504098 at * 4,

---

[1] The Pleasure State License, and its relevance to this case, were discussed in detail during a public conference before Magistrate Judge Dolinger. (Transcript of the June 5, 2009 Conference ("Conference Tr."), p. 8, lines 2-6; Copy attached as Exhibit A to the Declaration of Charles von Simson In Opposition To Defendants' Five Motions *In Limine* ("von Simson *In Limine* Opposition Decl."), submitted herewith).

Case No. CV 00 20905 (Feb. 19, 2008) (quoting F.R.E. 702, adv. Committee note (2000). "Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." Id.

Lay witnesses can also offer opinion testimony regarding material developed by another party, provided the testimony does not rely on scientific, technical or specialized knowledge. Medforms, Inc. v. Healthcare Management Solutions, Inc., 290 F.3d 98, 110-111 (2d Cir. 2002). In Medforms, the court admitted lay opinion of a computer programmer's supervisor on the issue of his work on third party computer programs. The testimony was admissible based on his work on the programs. The court also allowed the witness to use a programming utility to highlight the differences between source code files.

Ms. Plew will not present any opinion testimony that is nearly as ambitious as that offered in Medforms. The parties agree that the Pleasure State License is a relevant measure of damages in this case. (Conference Tr. p. 9, lines 4 through 13). Furthermore, there cannot be any meaningful argument that the Pleasure State License is not admissible at trial. The authenticity of the document is not disputed, and defendants' employee, Ms. Deborah Tucker, will testify regarding how the document was negotiated and how its royalty calculation is applied.

In light of the parties' agreement about the relevance of the document, Ms. Tucker's foundation testimony, and the admissibility of the document into evidence, Ms. Plew does not need any specialized experience of any kind to offer a lay opinion as to how the Pleasure State License should be considered in her own damages calculation. To

the extent defendants' want to challenge the weight of Ms. Plew's testimony, they are free to do so on cross-examination.

### B.   PLAINTIFF'S EXPERT CAN APPLY THE PLEASURE STATE LICENSE ROYALTY FORMULA TO THE 100 WAY BRA

Defendants also assert incorrectly that the application of the Pleasure State License royalty formula to the 100 Way bra is a new theory of damages, and that Ms. Edmark did not include the Pleasure State License in her damages analysis. Their argument on this point completely ignores Ms. Edmark's Supplemental Report, which was produced to defendants in advance of Ms. Edmark's deposition. (A copy of Ms. Edmark's Supplemental Expert Report is Exhibit 1 to the Declaration of John F. Ward, Esq. In Support Of Defendants' Supplemental Motion *In Limine* To Strike Expert Report And Exclude Trial Testimony Of Plaintiff's Damages Expert Tomima Edmark). In her supplemental report, Ms. Edmark reviewed the Pleasure State License royalty formula and applied the royalty formula to the 100 Way bra.

Ms. Edmark did not testify in either of her expert reports that a $3.00 per unit royalty was the only appropriate measure of damages in this case, nor did she testify that a $3.00 per unit royalty was the maximum measure of damages. Therefore, contrary to defendants' position, there is nothing "explicitly and internally inconsistent" between Ms. Plew's application of the Pleasure State License to the 100 Way bra and Ms. Edmark's application of the Pleasure State License to the 100 Way. Both Ms. Plew and Ms. Edmark will testify that the Pleasure State License royalty formula is a piece of data that would appropriately guide a damages calculation in this case. That testimony is not disputed. Ms. Plew will then apply the formula to the 100 Way bra and offer a lay opinion about the proper royalty to be derived from that calculation. To the extent Ms.

Plew draws the conclusion that an appropriate royalty would be higher than the $3.00 expressed by Ms. Edmark, defendants will be entitled to cross-examine both witnesses and the jury will be entitled to determine a reasonable royalty based on that testimony.

### C.   PLAINTIFF MAY OFFER FACT WITNESS TESTIMONY REGARDING THE GEORGIA PACIFIC FACTORS

Pursuant to 35 U.S.C. § 284, a court "may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." 35 U.S.C. § 284 (emphasis added). Section 284 is clear that expert testimony is not necessary to the award of damages, but rather may be received as an aid. Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370, 1382 (Fed.Cir. 2003).  Furthermore Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970)  lists expert testimony as only one of a number of factors to be considered in awarding infringement damages.

Defendants argue unavailingly that plaintiff cannot offer any evidence at trial regarding two of the Georgia Pacific factors: (1) the efficacy or value of design around alternatives and (2) customer demand for the 100 Way bra.  Defendants support that argument with the completely baseless assertion that since those factors were not addressed in plaintiff's expert report, they cannot be addressed at trial.  The argument fails because it ignores the plain language of the Patent Act and Georgia Pacific.

As noted above, neither 35 U.S.C. § 284 nor Georgia Pacific require a plaintiff to submit any expert testimony to prove a reasonable royalty.  Plaintiff is permitted to, and will, present evidence regarding both factors in the form of defendants' own documents and employee testimony.  Contrary to defendants' baseless assertion, the testimony of their damages expert (in addition to being inadmissible at trial) is sharply disputed by

7

evidence that design around options failed and customer demand for the 100 Way bra was strong.  Defendants' assertion that there is no evidence of customer demand is also incorrect; their own documents and witness testimony show precisely how many 100 Way bras were sold and at what profit margins.  Defendants will be free to cross examine each witness regarding the basis of their testimony, and the jury will consider the weight to be afforded that testimony in determining a reasonable royalty.

> **D.  PLAINTIFF CAN OFFER THE TESTIMONY OF DEFENDANTS' WITNESSES REGARDING PRIMARY AND SECONDARY INDICIA OF NON-OBVIOUSNESS**

Secondary indicia of non-obviousness include "commercial success, long felt but unsolved needs, failure of others, etc." <u>Graham v. John Deere Co. of Kansas</u>, 383 U.S. 1, 17-18 (1966).  Contrary to defendants' argument, expert testimony is not the sole source of evidence on this issue.  Plaintiff will present evidence regarding such indicia through the testimony of defendants' employees and potentially through the testimony of defendants' own expert.  Again, defendants will be free to cross examine plaintiff's witnesses on these issues and the jury will determine the weight to be afforded to their testimony.

> **E.  PLAINTIFF'S INFRINGEMENT EXPERT, MS. BEVERLY JOHNSON, MAY TESTIFY IN SUPPORT OF PLAINTIFF'S WILLFULNESS CASE**

Defendants also argue, without citation to any relevant authority, that plaintiff's infringement expert, Ms. Beverly Johnson, cannot testify regarding willfulness because she does not have personal knowledge of the facts of the case and because her expert report did not include an opinion on willfulness.  The argument fails because Ms. Johnson's infringement testimony is relevant to plaintiff's case for willfulness and enhanced damages.

Willful infringement is established where it is shown that defendants acted despite a high likelihood that their actions constituted infringement of a valid patent and that the risk  was either known or so obvious that it should have been known to defendants. In re Seagate Technology, LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  In addition, the Court of Appeals for the Federal Circuit has identified several factors which should be considered by a court when deciding whether to award enhanced damages for willful infringement, including the closeness of the infringement case. Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed.Cir.1992).

As plaintiff's infringement expert, Ms. Johnson's testimony will go directly to plaintiff's proof that defendants' infringement was, or should have been, obvious to anyone who bothered to conduct any meaningful due diligence, which defendants did not. That testimony is directly relevant to the closeness of the infringement case, and therefore to plaintiff's claim for willfulness and enhanced damages.

## II. THIS COURT SHOULD DENY DEFENDANTS' MOTION TO PREVENT THE USE OF PEJORATIVE TERMS OR PHRASES AT TRIAL

Defendants' motion *in limine* to preclude pejorative words does not cite a single case in which a court excluded statements made outside of the legal proceedings, based on the speculation that they might be repeated at trial.  Rather, in each of the three cases cited by defendants, the court excluded statements that a party had expressly proffered in support of its case in chief.  Aristocrat Leisure, Ltd. v. Deutsche Bank Trust Co. Ams., 2009 U.S. Dist. Lexis 89183 at *19 (S.D.N.Y September 28, 2009) (court precluded terms proffered by plaintiff in support of its case in chief); AIA Holdings, S.A. v. Lehman Bros., 2002 U.S. Dist. 22559 at *2-3, Case No. 97 Civ. 4978 (S.D.N.Y. Nov. 21, 2002) (court precluded phrase used by witness at his deposition in one context, but

allowed the phrase to be used in another context); <u>Highland Capital Mgmt., L.P. v. Schneider</u>, 551 F. Supp.2d 173, 193 (S.D.N.Y. 2008) (court precluded terms proffered by plaintiff in support of its case in chief).

Plaintiff does not intend to use pejorative terms as part of her case in chief. However, that does not mean that plaintiff should be restrained in advance from using certain words without regard to the context in which they might arise.  Given the many contexts in which words can arise at trial, the Court should not enter a blanket preclusion based solely on the speculation that they may be included in witness testimony.  To the extent specific words are used at trial which are pejorative in defendants' opinion, their remedy is an objection or cross-examination of the witness.

### III. THIS COURT SHOULD DENY DEFENDANTS' MOTION *IN LIMINE* TO PREVENT PLAINTIFF FROM ADVANCING ARGUMENTS AT TRIAL INCONSISTENT WITH THIS COURT'S CLAIM CONSTRUCTION ORDER

This Court has defined the claim term "hidden" as "concealed from sight."  Ms. Johnson testified that the fabric loops on the 100 Way bra could be considered to be concealed from sight because they are "camouflaged."  Contrary to defendants' position, Ms. Johnson did not try to re-define the term "hidden."  Rather, she explained how the structure of the 100 Way bra conceals the loops from sight.

Defendants are trying to change the meaning of "hidden" to "invisible."  But that is not the definition applied by the Court.  Defendants' strained "Where's Waldo" analogy manages to illustrate the point: Waldo may technically be visible once he is identified, but he is hidden, and hence the game is fun, because he is concealed from sight.  Defendants' analogy to the soldier wearing camouflage equipment in combat is even more tortured, but it also shows why Ms. Johnson's testimony is perfectly proper: a

soldier wearing camouflage equipment is concealed from sight.  That is precisely why he is wearing it.  The fact that he might be safer from flying bullets down in a foxhole has nothing to do with his visibility or the effectiveness of his camouflage.  Indeed, he may be more visible from the air in the foxhole than he would be above-ground, concealed from sight by his camouflage.  In either case, he need not be "invisible" to be "concealed from sight."

The principal case cited by defendants, Rentrop v. Spectranetics Corp., 514 F.Supp.2d 497 (S.D.N.Y. 2007), supports plaintiff's point.  In that case, the defendant moved for judgment as matter of law on after a jury verdict of infringement.  The basis for the motion was defendant's claim that plaintiff's expert had provided the jury with a definition of a claim term that was inconsistent with the claim definition provided by the court.  The court denied the motion on the grounds that its claim instruction to the jury did not foreclose expert testimony on additional characteristics of the accused product, and found that the verdict was supported by sufficient additional evidence.   "The jury also had before it the testimony of the inventor, plaintiff's expert and the cross-examination of defendant's expert.  The jury's finding of infringement is well-supported by the record and the motion for JMOL is denied." Id.

Similarly, the Court in this case will instruct the jury that "hidden" means "concealed from sight."  Ms. Johnson's testimony that the fabric loops could be considered to be hidden because they are camouflaged does not present an alternative definition of "hidden."  Rather, it provides an explanation for how the structure is "concealed from sight."  Defendants will be free to cross examine Ms. Johnson regarding her testimony, present their own expert, and test their Waldo and foxhole analogies

11

during closing argument. There is no reason to preclude Ms. Johnson's testimony.

Therefore, defendants' motion *in limine* should be denied.

## IV. THIS COURT SHOULD DENY DEFENDANTS' SUPPLEMENTAL MOTION *IN LIMINE* TO STRIKE EXPERT REPORT AND EXCLUDE TRIAL TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT TOMIMA EDMARK

Plaintiff's damages expert, Ms. Tomima Edmark is more than qualified to testify in this case. Her qualifications are set forth in full in the Expert Report and Testimony of Tomima Edmark (copy attached as von Simson *In Limine* Opposition Decl. Exhibit B).[2] Furthermore, Ms. Edmark's opinion is admissible because it is based on her extensive industry experience, rather than on a pseudo-scientific analysis.  For the reasons set forth in opposition to defendants' first motion to strike Ms. Edmark's report and testimony, and for the reasons set forth below, defendants' supplemental motion to strike Ms. Edmark's testimony should be denied.

### A. MS. EDMARK IS QUALIFIED TO TESTIFY AS A DAMAGES EXPERT

Rule 702 of the Federal Rules of Evidence provides that if "specialized knowledge will assist the trier of fact to understand the evidence . . . a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Courts within the Second Circuit "have liberally construed expert qualification requirements" when determining if a witness can be considered an expert.  Cary Oil Co.,

---

[2] Ms. Edmark's expert report has already been filed in the public record in this case as Exhibit 1 to the Declaration of Michael Zinna filed in support of Defendants' June 12, 2009 Motion to Strike Expert Report and Exclude Trial Testimony of Tomima Edmark.

Inc. v. MG Refining & Marketing, Inc., 2003 WL 1878246, Case No. 99 Civ. 1725 (S.D.N.Y. April 11, 2003), Emig v. Electrolux Home Products, Inc., 2008 WL 4200988 at *4, Case No. 06 CV 4791 (S.D.N.Y. September 11, 2008), United States v. Brown, 776 F.2d 397, 400 (2d Cir. 1985) (qualification requirements of Rule 702 "must be read in light of the liberalizing purpose of the rule"), Sullivan  v. Ford Motor Co., 2000 WL 343777 at *4, Case No. 97 CV 0593 (S.D.N.Y.  March 31, 2000) ("One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion."), Keenan v. Mine Safety Appliances Co., 2006 WL 2546551 at *2, Case No. 03 CV 710 (E.D.N.Y. Aug. 31, 2006) ("The qualifications necessary to testify as an expert are minimal").  Disputes about an expert's credentials properly go to the weight, not the admissibility, of her testimony.  McCullock v. H.B. Fuller Co., 61 F.3d 1038 (2d Cir. 1995).  For the witness's testimony to be admissible, it need only assist the trier of fact in some way. Keenan, 2006 WL 2546551 at *2.

Tomima Edmark's industry experience more than satisfies the standard for qualification as an expert witness on the applicability of the Ce Soir Lingerie and Pleasure State license royalty rates to sales of the infringing product.  Ms. Edmark is an entrepreneur in the intimate apparel industry who meets with many different bra manufacturers to review new trends in the industry.  To keep her company competitive, she must continuously analyze trends, prices and profitability for all the categories and brands her company sells. Prior to founding her present company, Ms. Edmark invented the TopsyTail hairstyling tool and obtained a patent for it in 1989.  Ms. Edmark began selling the product by mail order in 1991 and ultimately grew the TopsyTail Company to over $11 million in annual sales.  In addition to her hands-on business experience in the

intimate apparel and women's accessories industries, Ms. Edmark was an IBM sales representative and earned a master's degree in business administration from the University of Texas.  (See Expert Report and Testimony of Tomima Edmark).

Through her industry experience, Ms. Edmark has gained specialized knowledge concerning the pricing, sales, profitability and marketing of bras.  In her expert testimony, Ms. Edmark applied her expertise to compare the Ce Soir Lingerie and Pleasure State  licenses to the 100 Way bra.  That testimony, based on the insights of an entrepreneur in the industry, will be of particular value to the jury in setting infringement damages.

### B.   DEFENDANTS' OBJECTIONS TO MS. EDMARK'S METHODOLOGY GO TO THE WEIGHT, NOT THE ADMISSIBILITY, OF HER EXPERT REPORT AND TESTIMONY

Exclusion of expert testimony on the basis of the methodology employed by the expert is the exception rather than the rule.  <u>Malletier v. Dooney & Bourke, Inc.</u>, 525 F.Supp.2d 558, 562 (S.D.N.Y. 2007) (citing Fed.R.Evid. 702 Advisory Committee Note). The Second Circuit requires that courts assessing the reliability of expert testimony be mindful of the "presumption of admissibility of evidence." <u>Borawick</u>, 517 U.S. 1229, .

Defendants incorrectly argue that Ms. Edmark's testimony should be barred because the testimony does not satisfy the factors set forth in <u>Daubert</u>, 509 U.S. 579 (1993).  The Supreme Court has made clear that the <u>Daubert</u> factors are only to be applied where it makes sense to do so. <u>Emig</u>, 2008 WL 4200988 at *7 (citing <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 151-52).  There is no clear application of the <u>Daubert</u> factors where  experts have relied primarily on their experience in forming their opinions. <u>Emig</u>, 2008 WL 4200988 at *7) (citing <u>Liriano v. Hobart Corp.</u>, 949 F.Supp. 171, 177 (S.D.N.Y. 1996) ("Properly understood, the <u>Daubert</u> analysis applies to cases

involving unique, untested, or controversial methodologies or techniques. It is not appropriate to invoke the Daubert test in cases where expert testimony is based solely on experience or training, as opposed to a methodology or technique." )

Defendants also argue unavailingly, and without citation to any relevant authority, that Ms. Edmark's testimony should be barred because she did not consider all of the factors for determining a reasonable patent royalty set forth in Georgia-Pacific.   Contrary to defendants' position, it is permissible for the court to consider expert reports and testimony that focus only on specific Georgia-Pacific factors.  See Rosco, Inc. v. Mirror Lite Co. 2009 WL 1689301 at *7, Case No. 96 CV 5658 (S.D.N.Y. June 17, 2009) (discussing expert testimony on four Georgia-Pacific factors in determining a reasonable royalty).  Accordingly, Ms. Edmark's testimony primarily considers the royalty set by the Ce Soir License and the Pleasure State License (Georgia-Pacific factor 1), the nature and scope of the Ce Soir License and Pleasure State License (Georgia-Pacific factor 3), the profitability of defendants' accused products (Georgia-Pacific factor 4) and the portion of the profit or of the selling price that may be customary in the business for use of the invention (Georgia-Pacific factor 12).

Ms. Edmark's testimony applies her specialized knowledge of pricing and margins in the intimate apparel business, in combination with other Georgia Pacific factors, to explain how and why the royalty rates in the license agreement apply to the 100 Way bra.  Since her testimony is based on her experience rather than a scientific experiment or technical process, the Daubert analysis cannot be meaningfully applied to evaluate the admissibility of her testimony.  Rather, her testimony is admissible because her experience will be of significant value to the jury in fixing a reasonable royalty as

15

infringement damages.  Consequently, defendants' motion *in limine* should be denied.

### C.  MS. EDMARK'S SUPPLEMENTAL REPORT WAS TIMELY

Rule 26(e)(2) provides that any additions or changes to an expert report must be disclosed before the party's pretrial disclosures under Rule 26(a)(3) are due.  Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use [it] as evidence at a trial...."  In analyzing whether preclusion of expert testimony is an appropriate sanction under Rule 37, courts must consider the factors set forth in Softel, Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955 (2d Cir.1997). Those factors are: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Softel, 118 F.3d at 961

Ms. Edmark issued a supplemental expert report because counsel for plaintiff was not allowed to show her documents marked "Highly Confidential—Attorneys' Eyes Only" until after the close of expert discovery.  On April 2, 2009, six weeks before the May 15, 2009 deadline for initial expert reports, counsel for plaintiff sent counsel for defendants a letter identifying Ms. Edmark as an expert and informing defendants that plaintiff intended to show Ms. Edmark certain documents that had been designated "Highly Confidential—Attorneys' Eyes Only" pursuant to the terms of the Protective Order. (von Simson *In Limine* Opposition Decl. Ex. C). By an April 16, 2009 email, defendants refused to allow Ms. Edmark to have access to the documents at issue.  (von Simson *In Limine* Opposition Decl. Ex. D).  On May 15, 2009, Ms. Edmark issued her

16

initial expert report. (von Simson *In Limine* Opposition Decl. Ex. B). After several rounds of correspondence among counsel, counsel for plaintiff wrote to Magistrate Judge Dolinger on May 27, 2009 to schedule a pre-motion conference regarding the disclosure of confidential documents to Ms. Edmark, among other issues. (von Simson *In Limine* Opposition Decl.¶ 6).

A pre-motion conference was held on June 5, 2009.  At the conference, Judge Dolinger advised counsel for defendants that in order to bear their burden of proof and demonstrate competitive disadvantage from the disclosure to Ms. Edmark, they would have to submit an affidavit detailing the nature of the purported competitive disadvantage.  (von Simson *In Limine* Opposition Decl. Ex. A).  However, after defendants had objected for two months to showing the documents to Ms. Edmark, defendants never submitted the affidavit requested by Magistrate Judge Dolinger.  (von Simson *In Limine* Opposition Decl. ¶ 7).

Plaintiff then showed the confidential documents to Ms. Edmark.  (Id.).  After review of the documents, Ms. Edmark issued her supplemental expert report on July 25, 2009.  Defendants deposed Ms. Edmark on July 30, 2009.  At her deposition, defendants had a full opportunity to question Ms. Edmark on both her original and supplemental expert report.  (von Simson *In Limine* Opposition Decl. ¶ 8).

Ms. Edmark's supplemental expert report was timely pursuant to Rule 26(e)(2). The supplemental report was disclosed prior to the close of fact discover, prior to the close of depositions and well prior to the deadline for final pre-trial disclosures.

Furthermore, even if Ms. Edmark's supplemental report could be considered untimely, preclusion would not be appropriate pursuant to Rule 37.  Plaintiff's

explanation for the delay is that defendants opposed disclosure of certain documents for two months and then failed to make the showing required to bear their burden pursuant to the terms of the Protective Order.  Furthermore, Ms. Edmark is plaintiff's sole damages expert, and her testimony is critical to plaintiff's claim.  In addition, there was no arguable prejudice to defendants because they were able to conduct a complete deposition of Ms. Edmark regarding the supplemental expert report.  Finally, there is no reason whatsoever for a continuance because Ms. Edmark's deposition was completed over two years ago.  Defendants' motion to exclude Ms. Edmark's testimony from trial should be denied.

## V.   THIS COURT SHOULD DENY DEFENDANTS' MOTION *IN LIMINE* TO PREVENT PLAINTIFF FROM CALLING MS. LORI GREELEY TO TESTIFY AT TRIAL

Although styled as a motion *in limine*, defendants motion to prevent plaintiff from calling Ms. Lori Greeley at trial is actually a motion for a protective order.  Defendants do not claim that Ms. Greeley does not have any relevant information, nor do they claim that her testimony is not admissible.  And although defendants claim that Ms. Greeley would not have direct information about the 100 Way bra because she is the chief executive officer of Victoria's Secret, she did not become the CEO until January 2007, months after the decision was made to commercialize the 100 Way bra in mid to late 2006. (von Simson *In Limine* Opposition Decl. ¶ 9).  During the relevant time period, Ms. Greeley was the senior merchandising executive with responsibility for the product. Defendants concede that three witnesses identified her in that role.

In support of their motion, defendants turn Rule 26(e) on its head and make an argument that defies the purpose of the rule and the obligations it imposes.  The purpose of Rule 26(e) is to require a party to disclose witnesses with knowledge of the facts at

issue in order to allow the other side to obtain discovery from that witness.  Accordingly,

the Rule 26(e) obligation to supplement initial disclosures does not apply "when a

witness not previously disclosed is identified during the taking of a deposition."

Llewellyn v. Allstate Home Loans, Inc., 2011 WL 2415770 at *4. Case No. 08 cv 00179

(D. Colo. June 16, 2011) (citing Fed.R.Civ.P. 26(e) advisory committee's note to 1993

amendments).  That is because the purpose of the rule is served when all parties become

aware of the witness.

Rule 26(e) does not require a party to update its list of trial witnesses as the case

progresses.  Rather, the individual practices of this Court require the parties to identify all

trial witnesses in the parties' joint pretrial submission.  Plaintiff complied with that

deadline by identifying Ms. Greeley in advance, giving defendants more than enough

time to prepare their unavailing motion *in limine*.  Furthermore, even if Rule 26(e) did

apply, plaintiff did not have any obligation to update her initial disclosures because Ms.

Greeley was identified in multiple depositions.

Nor is there any basis for defendants' argument that Ms. Greeley is too important

to be called at trial.  The primary case cited by defendants contradicts that position.  In

Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 102 (S.D.N.Y. 1997), the court granted

defendant's motion to compel the second deposition of plaintiff's general counsel.  The

court ordered the deposition despite the fact that the witness had already been deposed,

defendant waited seven years to seek the second deposition, and plaintiff had accused

defendant of a campaign of harassment through abusive discovery.  Id.   "Nevertheless,

Rule 26(b)(1)'s broad, mandatory prescription for the discovery of all relevant evidence is

clear, and this Court finds that [the witness], as [plaintiff's] General Counsel throughout

this litigation as well as many of the events underlying it, possesses information relevant to the instant action."  Id.

Similarly, the court in Six West Retail Acquisition Corp. v. Sony Theatre Management Corp., 203 F.R.D. 98 (S.D.N.Y. 2001) granted plaintiff's motion to depose the CEO of Sony Corporation, the defendant's parent company.  The court found that the CEO might have relevant knowledge, and ordered him to appear for his deposition.

It is not plaintiff's intention to harass defendants or Ms. Greeley.  Plaintiff intends to make a claim for willful infringement and must therefore demonstrate that defendants' conduct in ignoring Ms. Plew's infringement claim was reckless, and that the reckless conduct extended to the most senior executives involved with the decision to market the product.  A significant piece of evidence will be the testimony of the most senior executive with responsibility for the 100 Way bra that defendants did not do any meaningful due diligence regarding third-party intellectual property rights either when they were developing the product or after this lawsuit began.  Ms. Greeley is that executive, and her knowledge of defendants' conduct from that perspective is unique. This Court should order Ms. Greeley to appear to testify at trial.

## CONCLUSION

For the foregoing reasons, defendants' five motions *in limine* should be denied.

Dated: August 23, 2011

_____

Charles von Simson (CV 1038)
Damon Morey LLP
200 Delaware Avenue, Suite 1200
Buffalo, NY 14202
Telephone: 716.858.3865

Stephen M. Chin (SC 8094)
von Simson & Chin LLP
62 William Street – Sixth Floor
New York, NY 10005
Telephone: 212.514.8653


Attorneys for Plaintiff