UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

KATERINA PLEW,

    Plaintiff,

-v-                                    No. 08 Civ. 3741 (LTS)(MHD)

LIMITED BRANDS, INC., INTIMATE
BRANDS, INC., LIMITED BRANDS
STORE OPERATIONS, INC., VICTORIA'S
SECRET STORES BRAND MANAGEMENT,
INC., VICTORIA'S SECRET DIRECT
BRAND MANAGEMENT, LLC AND
VICTORIA'S SECRET STORES, LLC,

    Defendants.

-------------------------------------------------------x



## MEMORANDUM OPINION AND ORDER

        Plaintiff Katerina Plew ("Plew" or "Plaintiff") brings this action against Limited Brands, Inc., Intimate Brands, Inc., Limited Brands Store Ope rations, Inc., Victoria's Secret Stores Brand Management, Inc., Victoria's Secret Direct Brand Management, LLC and Victoria's Secret Stores, LLC (collectively "Victoria's Secret" or "Defendants") alleging patent infringement. Specifically, Plaintiff asserts that the Defendants' Very Sexy 100-Way Brassiere ("100-Way Bra") infringes Plaintiff's U.S. Patent no. 6,733,362 (the "'362 patent"), which describes an adjustable type of brassiere. To resolve certain evidentiary questions in advance of trial, Plaintiff has filed a single motion in limine seeking two evidentiary rulings; Defendants have filed six separate motions in limine seeking a total of twelve evidentiary rulings. In addition, Defendants have filed a motion to bifurcate the trial of liability issues from that of willfulness and damages. The Court has

considered carefully all of the parties' submissions and arguments, and presumes familiarity with the general factual background of the parties' dispute.[1] Each motion is addressed below.

## DISCUSSION

I.  Plaintiff's Motion In Limine

   A.  Request to Exclude Evidence and Testimony Regarding Victoria's Secret's Licensing Agreement with Pleasure State

Plaintiff has signaled her intent to rely on the Pleasure State license royalty as a baseline for her calculation of damages. Plaintiff now seeks to bar Defendants from offering evidence contesting the Pleasure State license's reliability as a comparator on the grounds that Defendants stipulated, at a June 5, 2009, hearing, that they would not advance such an argument and that, based on this stipulation, Judge Dolinger denied Plaintiff's request for discovery of documents necessary to establish the license's reliability. Defendants do not address Plaintiff's assertion of prejudice; instead, they deny that they made a stipulation and reiterate their contention that the Pleasure State license is irrelevant to calculating what a reasonable royalty would have been for Plaintiff.

Defendants' attempt to recast their statements before Judge Dolinger as something other than a stipulation is inconsistent with the record. At the June 5, 2009, conference, Plaintiff sought a court order directing Defendants to produce correspondence concerning the negotiations of Victoria's Secret's licensing agreement with Pleasure State. Plaintiff clearly explained that she intended to use the Pleasure State license as a comparator to calculate a reasonable royalty, and that the requested correspondence was necessary to answer

---

[1]  See the Court's Memorandum Opinion and Order of August 4, 2010. (ECF docket entry no. 87).

Defendants' anticipated objection that the Pleasure State license was not analogous to any hypothetical agreement between Ms. Plew and Victoria's Secret. The following exchange ensued:

> THE COURT: Is the defendant going to be taking the position that this agreement, that we are talking about, is not a reasonable comparator for the purpose of determining a reasonable royalty?
>
> MR. ZINNA: I am not sure what you mean by comparator, I'm sorry.
>
> THE COURT: A piece of data that would guide and can appropriately guide the determination of what a reasonable royalty should be in this case.
>
> MR. ZINNA: We will not dispute that.

(Conference of June 5, 2009 Tr. 8:4-14). On the basis of this unambiguous exchange, Judge Dolinger deemed the requested correspondence duplicative and denied Plaintiff's motion. Days later, Defendants served the expert report of Dr. Patrick Kennedy, which advanced the very argument Defendants had disclaimed: that the subject matter of the Pleasure State license was "not comparable to the technology in Ms. Plew's patent," and that "the royalty amounts included in the [Pleasure State license] cannot be used to calculate a hypothetical royalty" for Ms. Plew's patent. (Expert Report of Dr. Patrick J. Kennedy ("Kennedy Report") at 11:13-19.)

Defendants' volte-face, however, does not warrant exclusion. "Exclusion of expert testimony is a drastic remedy" and is inappropriate where the movant could easily have cured the prejudice by seeking more discovery. RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94 Civ. 5587 (PKL), 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002). Plaintiff had ample opportunity to request additional discovery after Defendants revealed that they would challenge the relevance of the Pleasure State license. Dr. Kennedy's report was served a mere five days after the conference before Judge Dolinger. It is telling that, rather than renew her

discovery application after receiving the report, Plaintiff chose to wait more than two years – until the eve of trial – to plead unfairness. The Court will not reward Plaintiff's tactical choice by excluding highly probative testimony.

Accordingly, Plaintiff's request is denied.

B.     <u>Request to Exclude Testimony or Argument About Statutory Equivalents</u>

Plaintiff seeks to bar Defendants from offering testimony or argument that the 100-Way Bra does not embody the statutory equivalents of the claims in the '362 Patent. Plaintiff argues that Defendants' infringement expert did not discuss whether the 100-Way Bra incorporates statutory equivalents to the "means plus function" claim terms and that the expert is, accordingly, barred under Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c)(1) from offering such testimony at trial. Defendants contend that their expert responded to Plaintiff's statutory equivalence arguments with respect to each element.

The Court has reviewed Defendants' expert report and concludes that the expert opined to various degrees on statutory equivalence with respect to each element of the claim. (<u>See</u> Expert Report of Joyce Baran at 16-22, attached as Ex. K to Pl.s' Mot. in Limine). Accordingly, the request is denied.

II.     <u>Defendants' Motions in Limine</u>

A.     <u>Motion to Prevent Use of Pejorative Terms or Phrases</u>

Defendants move to prevent Plew from using pejorative terms or phrases at trial. Specifically, Defendants contend that Plew is likely to repeat allegations she has made in the press that Victoria's Secret "stole" her bra. Courts may prohibit the use of pejorative terms under Federal Rule of Evidence 403 "when such categorizations [are] inflammatory and unnecessary to prove a claim." <u>Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.</u>, No. 04

Civ. 10014(PKL), 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (prohibiting use of the term "tax haven"); A.I.A. Holdings, S.A. v. Lehman Bros., No. 97 Civ. 4978(LMM), 2002 WL 31655287, at *2-3 (S.D.N.Y. Nov. 21, 2002) (prohibiting use of the phrase "rat trading"). The Court agrees that characterizing Victoria's Secret actions as "stealing" risks prejudicing the jury and will not aid in its finding of facts. Accordingly, Defendants' motion is granted.

B.  Motion to Prevent Lori Greeley From Testifying

Defendants seek to prevent Plaintiff from calling Victoria's Secret's CEO, Lori Greeley, to testify at trial. Defendants argue that Plaintiff has failed to show that Greeley possesses unique information about the patent-in-suit, that Plaintiff failed to disclose her as a potential witness in a timely fashion, and that Plaintiff's true purpose is harassment.

Courts must be mindful of the potential for harassment and disruption to business affairs when highly-placed executives are forced to testify. See Six West Retail Acquisition v. Sony Theatre Management Corp., 203 F.R.D. 98, 102 (S.D.N.Y. 2001). Where a plaintiff fails to make any demonstration that the executive possesses "some unique knowledge of the issues in the case, it may be appropriate to preclude a redundant [examination] of [a] highly-placed executive." Id. (internal quotation marks omitted).

There is insufficient evidence in the record to persuade the Court that Greeley possesses unique information relevant to this case. While several Victoria's Secret witnesses stated in their depositions that Greeley was part of the division responsible for commercializing the 100-Way Bra, none has provided any detail as to her role in that process. Plaintiff has already deposed two senior executives with knowledge of the product, but has made no effort to depose Greeley.

Accordingly, the Court will grant the motion, provided that Plaintiff may make an

application, upon two business days' advance notice to the Court and opposing counsel, to call Ms. Greeley as a witness. In any such application, Plaintiff must make a proffer sufficient to demonstrate that Ms. Greeley has personal knowledge of matters relevant to this action and that the probative value of her proposed testimony is not substantially outweighed by any potential unfair prejudice, the risk of undue delay, waste of time, or the presentation of cumulative evidence.

C.   Motion to Prevent Arguments Inconsistent with the Claim Construction Order

Defendants seek to preclude Plew from making arguments that Defendants contend are inconsistent with the Court's April 2, 2009, claim construction order. "[M]atters of claim construction, even those aided by expert testimony, are questions for the court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 387 (1996). Due to the risk of jury confusion, expert witnesses are not permitted to offer testimony that conflicts with the Court's construction of the claim. Rentrop v. Spectranetics Corp., 514 F. Supp. 2d 497, 505 (S.D.N.Y. 2007); CytoLogix Corp. v. Ventana Med. Systems, Inc., 424 F.3d 1168, 1172 (Fed. Cir. 2005).

The dispute here centers on the construction of the word "hidden," which the Court, pursuant to a stipulation, has defined as "concealed from sight." Claim 1 requires "a strip of fabric loops extending along, and just below so as to be hidden by, the free upper edges of the body-facing surfaces of the pair of torso bands and the free upper edges of the body-facing surfaces of the pair of cups." The parties agree that the loops on the 100-Way Bra can be seen, but Plew's expert intends to testify that they are not noticeable or recognizable as such – in other words, that the loops are "camouflaged." Defendants contend that the two concepts are distinct and incompatible, illustrating their point with various military and "Where's Waldo" analogies. To paraphrase: a soldier crouched in a foxhole is "concealed from sight," whereas a soldier in

camouflage – like Waldo in "Where's Waldo" – is visible to anyone who looks hard enough. Plaintiff responds that Defendants are conflating "concealed from sight" with "invisible."

Before wading into this dispute, it is worth emphasizing that the claim construction order provides that all the terms defined therein will be "construed according to their plain and ordinary meaning." With that preface in mind, the Court finds that Plaintiff's expert testimony that the loops are "camouflaged" is consistent with the claim construction order. Defendants' fixation on the supposed paradox of something being simultaneously visible and "concealed from sight" ignores how these words are used in ordinary speech to describe perception. If an observer looked directly at a chameleon on a log yet discerned nothing but moss and wood, it would perfectly good English to describe the reptile as "hidden" or "concealed from sight." One could say that the chameleon is "concealed from sight" by the resemblance between its skin tones and the background. Plaintiff's expert's contention – that the loops are designed to blend in with the trim such that an observer would look upon them and discern only trim – is no different.

Accordingly, Defendants' motion is denied.

D.   Motion to Strike Testimony and Expert Report of Tomima Edmark

Defendants move to exclude the expert report and testimony of Plaintiff's damages expert, Tomima Edmark, on the grounds that (1) she lacks the requisite experience and knowledge to qualify as a patent damages expert, and (2) her methodology is inadequate. In addition, Defendants move to strike Ms. Edmark's Supplemental Report, asserting that it is untimely and an impermissible "sur-rebuttal."

Federal Rule of Evidence 702 permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify if her "scientific, technical, or

other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and if:

> [1] the testimony is based on sufficient facts or data, [2] the testimony is the product of reliable principles and methods, and [3] the witness has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2011). The Court exercises a "gatekeeping" function in connection with expert testimony. See GE v. Joiner, 522 U.S. 136, 142 (1997); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). To this end, the trial judge must "ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). This gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Id. at 141.

1. Qualifications

As a threshold matter, the Court must first assess whether the witness has the requisite qualifications. Courts in this Circuit have liberally construed expert qualification requirements when assessing whether a witness can be deemed an expert under Rule 702. See Cary Oil Co., Inc. v. MG Refining & Marketing, Inc., No. 99 Civ. 1725(VM), 2003 WL 1878246, at *1 (S.D.N.Y. April 11, 2003); Sullivan v. Ford Motor Co., No. 97 Civ. 0593(RCC), 2000 WL 343777, at *4 (S.D.N.Y. Mar. 31, 2000) ("One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion."); Canino v. HRP, Inc., 105 F. Supp. 2d 21, 27 (N.D.N.Y. 2000) ("liberality and flexibility in evaluating qualifications should be the rule").

The Court finds Plaintiff's expert sufficiently qualified. Ms. Edmark has decades of experience in the industry. She is the founder of the Andra Group, a parent company of two

internet retail apparel websites, through which she sells bras and lingerie. As the chief executive officer, she regularly meets with bra manufacturers to review products and she has initiated many distribution arrangements with national and international distributors. She analyzes sales trends, prices, and profitability of sales for her company's products. Defendants are correct that, although Ms. Edmark has filed several patents, she has never licensed one. However, she is not unacquainted with the licensing process, having licensed a trade name for TopsyTail®; nor is she unfamiliar with the patent process, having filed for several herself. Defendants are free to attack her inexperience in negotiating patent licenses in particular at trial, but whatever gaps exist in her qualifications are not enough to justify excluding her testimony. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert witness's] credentials . . . go to the weight, not the admissibility, of [her] testimony.").

    2.    Methodology

Defendants attack the methodology of Ms. Edmark's first report on the grounds that (1) she arrives at a reasonable royalty calculation by improperly assuming that Victoria's Secret would have agreed to the same royalty rate as Ce Soir, d/b/a Fashion Farms (a third-party with which Ms. Plew negotiated a license), and (2) the report fails to mention any of the factors enumerated in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970); see also Unisplay, S.A. v. American Electronic Sign Co., Inc., 69 F.3d 512, 517 n.7 (Fed. Cir. 1995) (recognizing that Georgia-Pacific contains the comprehensive list of relevant factors in determining a reasonable royalty). However, Ms. Edmark's Supplemental Report analyzes each of the Georgia-Pacific factors and explains why, in her opinion, Ms. Plew

would have received the same royalty rate from Victoria's Secret.[2] Thus, if the Court finds that the Supplemental Report is admissible, it need not decide whether the initial report's methodology satisfied the requirements of Rule 702.

### 3. Admissibility of the Supplemental Report

Plaintiff concedes that the Supplemental Report was served after the close of expert discovery but argues that the delay was due to Defendants' refusal to afford Ms. Edmark access to documents necessary to complete her report. Defendants respond that Ms. Edmark could have discussed a majority of the George-Pacific factors before she received access to the withheld documents, and that her failure to do so constitutes a violation of Rule 26(a)(2)(B)'s command that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). In addition, Defendants argue that the Supplemental Report should be struck because it is sur-rebuttal masquerading as a supplement.

Neither argument establishes a basis for excluding the report or testimony. "Exclusion of expert testimony is a drastic remedy." See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94 Civ. 5587(PKL), 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002) (internal citations and quotation marks omitted). Courts will not automatically resort to exclusion for failure to strictly comply with Rule 26, especially where doing so would "frustrate the Federal Rules' overarching objective of doing substantial justice to litigants." In re Kreta

---

[2] To the extent that Defendants contend Ms. Edmark's claims here are speculative or based on improper assumptions, Defendants are free to expose such flaws at trial. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Shipping, S.A., 181 F.R.D. 273, 277 (S.D.N.Y. 1998). Thus, when determining whether to exclude expert testimony, courts must consider (1) the prejudice suffered by the party against whom the excluded witness would testify, (2) the availability of options, short of exclusion, to cure the prejudice, (3) the impact of permitting (or excluding) the testimony on the orderly and efficient trial of the case, and (4) bad faith or willfulness in failing to comply with the court's order. Id. In general, absent prejudice and bad faith, courts will not resort to exclusion. See, e.g., Johnson Electric North America, Inc. v. Mabuchi Motor America Corp., 77 F. Supp. 2d. 446, 458 (S.D.N.Y. 1999) (Precluding evidence "that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents flagrant bad faith and callous disregard for the rules.").

Defendants have failed to identify any prejudice, nor have they demonstrated that Plaintiff acted in bad faith. Defendants cannot claim that they were blind-sided by the Supplemental Report: it was served prior to the close of fact discovery and depositions, and well before the deadline for final pre-trial disclosures. Ms. Edmark's initial report clearly disclosed that it was preliminary and that a second report would follow Defendants' production of additional, responsive documents. Five days after the Supplemental Report was served, Defendants deposed Ms. Edmark and had a full opportunity to question the Report's conclusions. As for Defendants' argument that the Supplement Report is sur-rebuttal, only one paragraph of the entire Supplemental Report references testimony by Defendants' experts and Defendants have failed to show that this single paragraph prejudices them in any way.

Accordingly, Defendants' motion is denied.

E. Motion to Preclude Plaintiff's Expert From Offering Testimony Outside The Scope of or Inconsistent With The Expert Report

Defendants seek to preclude Ms. Plew from advancing a reasonable royalty calculation higher than that advanced by Plaintiff's damages expert, Ms. Edmark. Ms. Plew proffers that she will base her testimony on calculations in the Pleasure State license. However, the license document was produced under an "Attorney's Eyes Only" confidentiality designation. Ms. Plew cannot offer testimony based on the contents of a document that she is not allowed to view. See Fed. R. Evid. 602 (A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Accordingly, the request is granted.

F.  Motion to Preclude Arguments about Potential Design-Around Alternatives/Demand For Patented Features of the Bra/Secondary Indicia of Non-Obviousness

Defendants move to preclude Plaintiff from (1) challenging the efficacy or value of the potential design-around alternatives relied on by Defendants' damages expert, Dr. Kennedy, (2) making any reference to consumer demand for the patented features of Victoria's Secret's accused bra, and (3) making any arguments regarding secondary indicia of non-obviousness. Defendants contend that Plaintiff's experts failed to address any of those points. Plaintiff replies that she should be permitted to offer layperson testimony as to each. The Court grants each of Defendants' requests to the extent that they seek to bar Plaintiff's experts from testifying. However, Plaintiff may offer her own testimony on these subjects. Plaintiff may also cross-examine Defendants' witnesses about design-around, customer demand, and secondary indicia of non-obviousness if the subjects are broached by those witnesses on direct. If Plaintiff wishes to reference any of these topics in her opening, she must provide two business days' advance notice to the Court and defense counsel, identifying the subject matter and foundation of

the statement she plans to make.

Accordingly, the request is granted with the conditions and modifications set forth above.

### G. Motion to Preclude Expert Testimony Regarding Victoria's Secret's Allegedly Willful Or Reckless Conduct

Defendants seek to bar Plaintiff's experts from offering testimony regarding Victoria's Secret's allegedly willful or reckless conduct on the grounds that (1) the expert reports and depositions fail to address the matter, and (2) Plaintiff's experts lack personal knowledge of the facts of this case and, thus, may not testify as lay witnesses. See Fed. R. Evid. 701. These requests are premised on a misapprehension of the law of wilful infringement. An expert need only review the patent description and the accused product to offer probative testimony on the objective inquiry as to willfulness – she need not know anything about the parties' transaction. See In re Seagate Technology, LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) ("[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. . . . The state of mind of the accused infringer is not relevant to this objective inquiry."). A willfulness finding hinges, in large part, on how closely the patent and accused product resemble each other. Id. Plaintiff's expert report addresses that question directly.

Accordingly, this motion is denied.

### H. Motion to Prevent Admission of Evidence Concerning Indemnification and Subsequent Remedial Measures

Defendants requests that Plaintiff be barred from: (1) arguing that Defendants' decision not to seek indemnification from DB Apparel UK, Ltd. ("DBA") is evidence that Defendants engaged in culpable conduct; (2) arguing that Defendants' decision to discontinue sales

of the 100-Way Bra is evidence that Defendants believed that the bra infringed on Plaintiff's patent-in-suit; and (3) arguing that the 7-Way Bra was specifically designed to avoid infringing the patent-in-suit.

    1.    <u>DBA</u>

The contract that DBA and Defendants signed for the resale of the 100-Way Bra included an indemnification provision covering patent infringement claims that arose out of DBA's – but not Victoria's Secret's – intellectual property. Defendants have claimed that DBA designed the 100-Way Bra and supplied it to Victoria's Secret for resale. Plaintiff has signaled her intent to use Defendants' decision not to seek indemnification as evidence that DBA did not design the bra, but rather, that Defendants "stole" the design from Plaintiff.

Defendants' motion is premised on Federal Rule of Evidence 411, which provides:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

Fed. R. Evid. 411 (2011). Plaintiff argues that the indemnification agreement is not "insurance" for the purposes of Rule 411, and that, even if it is, evidence concerning that agreement is permissible to show ownership.

The Court need not reach the issue of whether the indemnification agreement is subject to exclusion under Rule 411 because it finds that evidence of the agreement is in any event inadmissible under Rule 403. The question before the jury is whether Plaintiff's patent was valid and whether the 100-Way Bra infringed it, not the means by which Defendants acquired the design. Allowing Plaintiff to introduce evidence about the latter risks inviting a

mini-trial on an issue that is both legally inconsequential and potentially unfairly prejudicial. Those risks substantially outweigh any probative value of the evidence. Accordingly, the request is granted.

### 2. Discontinuation of the 100-Way Bra

Defendants seek to bar Plaintiff from introducing evidence, to show culpable conduct, of Victoria's Secret's decision to discontinue the sale of the 100-Way Bra. Federal Rule of Evidence 407 provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Fed. R. Evid. 407 (2011). In her response, Plaintiff disclaims any intention of using the discontinuation to show culpable conduct and indicates that she will introduce the dates of sale for the limited purpose of showing the duration of the sales of the 100-Way Bra, presumably for damages purposes. That purpose is consistent with Rule 407. Accordingly, the motion is granted to the extent that Plaintiff may only introduce the termination date of the 100-Way Bra sales to define the duration of those sales.

### 3. 7-Way Bra Design

Defendants seek to bar Plaintiff from introducing evidence of design changes to the product that became the 7-Way Bra to show culpable conduct. Plaintiff indicates that she intends to argue that Defendants altered the design of the 7-Way Bra after suit was filed in this case in order to avoid further infringement. Such argumentation is clearly prohibited by Rule 407. Accordingly, the request is granted.

## III. Defendants' Motion to Bifurcate the Trial on Liability from Damages and Willfulness

Defendants have moved pursuant to Federal Rule of Civil Procedure 42(b) to

bifurcate the trial of liability from that of damages and willfulness issues. Rule 42(b) provides that a court may order a separate trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b) (2011). Defendants contend that bifurcation is necessary to avoid jury confusion and to prevent Plaintiff from prejudicing the jury with false and inflammatory testimony.

"[W]hether to bifurcate a trial . . . is a matter within the sound discretion of the trial court." Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 15 (2d Cir. 1988). Courts generally consider three factors in assessing the appropriateness of bifurcation: "1) whether significant resources would be saved by bifurcation, 2) whether bifurcation will increase juror comprehension [or prevent jury bias], and 3) whether bifurcation will lead to repeat presentations of the same evidence and witnesses." Gaus v. Conair Corp., No. 94 Civ. 5693(KTD), 2000 WL 1277365, at *3 (S.D.N.Y. Sept. 7, 2000). "Bifurcation in patent cases, as in others, is the exception, not the rule," and "[t]he moving party bears the burden of establishing that bifurcation is warranted." WeddingChannel.com, Inc. v. The Knot, Inc., No. 03 Civ. 7369(RWS), 2004 WL 2984305, at *1 (S.D.N.Y. Dec. 23, 2004) (internal quotations omitted).

The first and third of the Gaus factors cut against bifurcation. Rather than conserving judicial resources, bifurcation would extend the duration of the trial and require the parties to re-present witnesses and evidence. Defendants downplay the extent of this duplication, asserting that there is little, if any, overlap between liability and damages/willfulness evidence. Federal Circuit law on willfulness belies that contention. Under In re Seagate Technology, LLC, a patentee who alleges willful infringement must show "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and that "this objectively defined risk (determined by the record developed in the

infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." 497 F.3d 1360, 1371 (Fed. Cir. 2007) (emphasis added).  As the parenthetical makes clear, the willfulness determination is "inextricably bound to the facts underlying the alleged infringement." Computer Associates Intern., Inc. v. Simple.com, Inc., 247 F.R.D. 63, 67-68 (E.D.N.Y. 2007) (quoting THK America, Inc., v. NSK Co. Ltd., 151 F.R.D. 625, 629 (N.D. Ill. 1993)).  See id. ("The overlap of evidence on the issues of liability and willfulness in this case, heavily disfavors . . . bifurcation."); Trading Techs. Int'l Inc. v. eSpeed, Inc., 431 F. Supp. 2d 834, 841 (N.D. Ill. 2006) (same); Gaus, 2000 WL 1277365, at *3 (same).

        Defendants argue that bifurcation is necessary to ensure jury comprehension.  The inherent complexity of patent cases, the argument goes, imposes an "extraordinary burden" on the jury; bifurcation is necessary to break up the case into digestible pieces.  That argument is most persuasive where the action involves an esoteric technology.  Its persuasive force is much diminished in a case, such as this, where the technology at issue is something as low-tech as ladies' undergarments. See, e.g., Computer Associates Intern, 247 F.R.D. at 68 (E.D.N.Y. 2007) (bifurcation less appropriate when subject matter is a familiar technology); WeddingChannel.com, 2004 WL 2984305, at *2 (same); Gaus, 2000 WL 1277365, at *3 (S.D.N.Y. Sept. 6, 2000) (bifurcation inappropriate where the case "involves only one patent and a relatively simple theory of damages, reasonable royalties").

        Defendants' final argument in support of bifurcation is that Ms. Plew will prejudice the jury by making "false and inflammatory remarks" that Victoria's Secret "stole [her] bra."  However, the Court has addressed this risk by granting Defendants' motion in limine barring Plaintiff from using pejorative phrases.  The Court is confident that any remaining

potential prejudice can be dealt with by proper trial management. Accordingly, the motion is denied.

## CONCLUSION

For the reasons state above, Plaintiff's motion in limine is **denied** in full. Defendants' motion to prevent the use of pejorative terms is **granted**. Defendants' motion to prevent Plaintiff from calling Ms. Greeley is **granted.** Defendants' motion to prevent Plaintiff from advancing arguments at trial inconsistent with the Court's claim construction order is **denied.** Defendants' motion to strike the expert report and exclude the expert testimony of Ms. Edmark is **denied.** Defendants' motion to preclude Plaintiff and her experts from offering testimony inconsistent with or outside the expert reports is **granted in part**, and **denied in part**. Defendants' motion to prevent the admission of evidence concerning indemnification and subsequent remedial measures is **granted**. Defendants' motion to bifurcate the trial on liability from willfulness and damages issues is **denied.**

This memorandum opinion resolves docket entries no. 103, 108, 114, 118, 122, 126, 130, and 164.

The final pre-trial conference in this case is scheduled for February 23, 2012, at 10:30 a.m.

SO ORDERED.

Dated: New York, New York
February 6, 2012

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge